UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

_____

)
Conservation Law Foundation, Inc. )
                   ) Case No.
          Plaintiff, )
                   ) **COMPLAINT FOR DECLARATORY AND**
                   ) **INJUNCTIVE RELIEF AND CIVIL**
      v.             ) **PENALTIES**
                   )
Minichiello Bros, Inc. and )
                   )
Scrap It, Inc. )
                   ) (Federal Water Pollution Control Act,
          Defendant. ) 33 U.S.C. §§ 1251 to 1387)
                   )
                   )
_____

Conservation Law Foundation, Inc. ("CLF") by and through its counsel, hereby alleges:

**INTRODUCTION**

1.     This is a civil suit brought under the citizen suit enforcement provisions of the

Federal Water Pollution Control Act, 33 U.S.C. § 1251, et seq. (the "Clean Water Act,"

"the Act," or "CWA").  Plaintiff seeks declaratory judgment, injunctive relief, and other

relief the Court deems appropriate to correct the Defendants' violations of the CWA,

which include continuous and ongoing unauthorized discharges of polluted stormwater

runoff from their Everett, Massachusetts scrap metal recycling facilities into waters of the

United States and failure to comply with the EPA Multi-Sector General Permit for

Stormwater Discharges Associated With Industrial Activity ("MSGP" or "Multi-Sector

General Permit").

2.      The Mystic River watershed is home to approximately half a million people.  The watershed is also home to aquatic life, plants, and animal species that rely on the river, its tributaries, and adjacent wetlands for their survival.

3.      The CWA requires that states establish minimum water quality criteria and standards to protect human health and aquatic life.  CWA §§ 303-304, 33 U.S.C. §§ 1313-1314.

4.      Under the Massachusetts Surface Water Quality Standards, the Mystic River is "designated as a habitat for fish, other aquatic life and wildlife, including for their reproduction, migration, growth and other critical functions, and for primary and secondary contact recreation," and "shall have consistently good aesthetic value." 314 Mass. Code Regs. 4.05:4(b).

5.      The Massachusetts Surface Water Quality Standards establish minimum standards for a variety of pollutants, including but not limited to dissolved oxygen, temperature, pathogens (bacteria), solids, oil and grease, color and turbidity, taste and odor, nutrients, aesthetics, radioactivity, and toxic pollutants. 314 Mass. Code Regs. 4.05.

6.      The Massachusetts Department of Environmental Protection ("MassDEP") has found that levels of numerous pollutants including metals, oil and grease, organic enrichment/oxygen depletion, inorganic pollutants, pathogens, taste, color, odor, and ammonia consistently exceed the allowable levels under state water quality standards for the portion of the river between the Amelia Earhart Dam and Boston Harbor.[1]

---

[1] MassDEP, Integrated List of Waters (1995), *available at* http://www.mass.gov/dep/water/resources/08list2.pdf (last accessed Sept. 30, 2010). A Total Maximum Daily Load (TMDL) has not been established for the Mystic River. See EPA, Listed Water Information, Mystic River (2006), *available at* http://oaspub.epa.gov/tmdl/enviro.control?p_list_id=MA71-03&p_cycle=2006 (last visited Sept. 30, 2010).

7.      Stormwater runoff is one of the major sources of contamination of the Mystic River and its tributaries.

8.      Stormwater discharges from the Minichiello Bros., Inc. Dexter Street and Scrap It, Inc.'s Second Street facilities (the "Facilities" or the "Defendants") contribute to the failure of the Mystic River and its tributary, the Island End River, to meet minimum water quality standards.

9.      Minichiello Bros., Inc. ("Minichiello Bros.") and Scrap It, Inc. ("Scrap It") engage in industrial activities such as material handling and storage, and vehicle traffic in and out of the Facilities.  As precipitation comes into contact with pollutants generated by these activities, it picks up pollutants and is conveyed to nearby storm sewer systems and into the Mystic River and Island End River.

## JURISDICTION AND VENUE

10.      This is a civil suit brought under the citizen suit enforcement provisions of the Federal Water Pollution Control Act, 33 U.S.C. § 1251 *et seq.* (the "Clean Water Act" or the "CWA").  This Court has subject matter jurisdiction over the parties and this action pursuant to Section 505(a)(1) of the CWA, 33 U.S.C. § 1365(a)(1) and 28 U.S.C. § 1331 (an action arising under the Constitution and laws of the United States).

11.      Plaintiff has complied with the statutory notice requirements under Section 505(a)(1) of the CWA, 33 U.S.C. § 1365(a)(1), and the corresponding regulations at 40 C.F.R. § 135.2.

12.      On July 14, 2010, Plaintiff provided notice to Minichiello Bros., Inc. and Scrap It for violations of the Clean Water Act at two locations: the Minichiello Bros. facility at 2

Dexter Street, Everett, MA 02149 ( "Dexter Street Facility"), and Scrap It's facility at

431 Second Street, Everett, MA 02149 ("Second Street Facility")..

13.     On July 14, 2010, Plaintiff provided notice of its intention to file suit against

Minichiello Bros., Inc. for violations of the Clean Water Act at the Dexter Street Facility

by sending a 60-day notice letter ("Notice Letter") via certified mail to Tanya

Minichiello, the managing agent and/or owner of Minichiello Bros., Inc, regarding

Minichiello Bros. Inc's violations of the Clean Water Act.  33 U.S.C. § 1365(a)(1); 40

C.F.R. § 135.2(a)(1). A copy of the Notice Letter was also sent to the registered agent for

Minichiello Bros., Inc, Anthony Pesce, Esq., as required by 40 C.F.R. § 135.2(a)(1).[2]

14.     On July 14, 2010, Plaintiff provided notice of its intention to file suit against

Scrap It for violations of the Clean Water Act at the Second Street Facility by sending a

60-day notice letter ("Notice Letter") via certified mail to Tanya Minichiello, the

managing agent and/or owner of Scrap It, regarding Scrap It's violations of the Clean

Water Act.  33 U.S.C. § 1365(a)(1); 40 C.F.R. § 135.2(a)(1). A copy of the Notice Letter

was also sent to the registered agent for Scrap It, Anthony Pesce, Esq., as required by 40

C.F.R. § 135.2(a)(1).

15.     A copy of each Notice Letter was sent to the Administrator of the United States

Environmental Protection Agency ("EPA"), the Administrator of EPA Region I, and the

Commissioner of the Massachusetts Department of Environmental Protection

("MassDEP") pursuant to the CWA, 33 U.S.C. § 1365(b)(1)(A) and 40 C.F.R. §

135.2(a)(1).

---

[2] The corporate filings on file at the Secretary of the Commonwealth's website as of the date of mailing of
the 60-day notice letter indicated the name of the registered agent as Anthony Pesce, Esq. for Scrap-It, Inc.,
and Antonio Pesce, Esq. for Minichiello Bros., both at the same address at 427A Broadway, Everett, MA
02149.

16.     True and correct copies of CLF's Notice Letters are attached as Exhibits A and B, and are incorporated by reference.

17.     More than sixty days have passed since the Notice Letters were served on Defendants and the state and federal agencies.

18.     Neither the EPA nor the Commonwealth of Massachusetts has commenced or is diligently prosecuting a court action to redress the violations alleged in this complaint. 33 U.S.C. § 1365(b)(1)(B).

19.     Venue is proper in the District Court of Massachusetts pursuant to Section 505(c)(1) of the Act, 33 U.S.C. § 1365(c)(1), because the source of the violations is located within this judicial district.

## PARTIES

20.     Plaintiff CLF is a not-for-profit corporation incorporated under the laws of the Commonwealth of Massachusetts and with a principal place of business at 62 Summer Street, Boston, MA, 02110.

21.     CLF's mission includes the conservation and protection of the many uses of the waters in and around the Mystic River watershed for, among other things, fishing, recreation, boating, scenic and aesthetic enjoyment, and scientific purposes.  To further these goals, CLF actively seeks federal and state agency implementation of the Clean Water Act and, where necessary, directly initiates enforcement actions on behalf of itself and its members.

22.     Members of CLF live on or near the Mystic River and its tributaries, and use and enjoy the watershed for recreational, aesthetic, and scientific purposes.

23.     Discharges of pollutants by Defendants adversely affect CLF's members' use and enjoyment of the Mystic River watershed.

24.     The interests of CLF's members have been, are being, and will continue to be adversely affected by the Owners' and Operators' failure to comply with the Clean Water Act and the MSGP.  The relief sought will redress the harms to Plaintiff by Defendants' activities.  Continuing commission of the acts and omissions alleged above have and will continue to irreparably harm Plaintiff's members, for which harm they have no plain, speedy, or adequate remedy at law.

25.     Minichiello Bros., Inc. is a corporation organized under the laws of the Commonwealth of Massachusetts.

26.     Scrap It, Inc. is a corporation organized under the laws of the Commonwealth of Massachusetts.

27.     Defendant Minichiello Bros., Inc. operates a scrap metal recycling facility at 2 Dexter Street, Everett, Massachusetts.  The front of the Dexter Street Facility is situated on Dexter Street and one side of the Facility property abuts Broadway.   An entry/exit point from the Facility is located on Dexter Street.

28.     Tanya Minichiello is the President of Minichiello Bros., Inc.

29.     Antonio Pesce, Esq. is the registered agent for Minichiello Bros., Inc.

30.     Minichiello Bros., Inc. maintains, operates, and is responsible for industrial activities at its Facility.

31.     Scrap It, Inc. operates a scrap metal recycling facility at 431 Second Street, Everett, Massachusetts. The Facility has an entry/exit on Second Street.

32.     Tanya Minichiello is the President of Scrap It, Inc.

33.     Anthony Pesce, Esq. is the registered agent for Scrap It, Inc.

34.     Scrap It, Inc. maintains, operates, and is responsible for industrial **a**ctivities at its Facility.

## STATUTORY BACKGROUND

### The Clean Water Act

35.     Section 301(a) of the CWA, 33 U.S.C. § 1311(a), prohibits the discharge of any pollutant into waters of the United States from a "point source," unless the discharge complies with various enumerated sections of the CWA.  Among other things, Section 301(a) prohibits discharges not authorized by, or in violation of, the terms of a valid National Pollutant Discharge Elimination System ("NPDES") permit issued pursuant to Section 402(p) of the CWA, 33 U.S.C. § 1342(p).

36.     "Point source" is defined broadly under § 502(14) of the CWA to include, "any discernible, confined and discrete conveyance, including but not limited to any pipe, ditch, channel, tunnel, conduit, well, discrete fissure, container, rolling stock, concentrated animal feeding operation, or vessel or other floating craft, from which pollutants are or may be discharged." CWA § 502(14), 33 U.S.C. § 1362(14).

37.     Congress amended the Clean Water Act in 1987 to require that certain industrial facilities obtain stormwater discharge permits. Water Quality Act of 1987, Pub. L. No. 100-4, § 405, 101 Stat 7 (1987); see 55 Fed. Reg. 47990, 47991-93 (Nov. 16, 1990).

38.     Section 402 of the CWA requires that NPDES permits be issued for stormwater discharges associated with industrial activities.  CWA §§ 402(a)(1), 402(p)(2), 402(p)(3)(A), 402(p)(4), 402(p)(6); 33 U.S.C. §§ 1342(a)(1), 1342(p)(2), 1342(p)(3)(A), 1342(p)(4), 1342(p)(6).

39.     EPA regulations set forth at 40 C.F.R. § 122.26 required industrial dischargers to submit applications for permit coverage no later than October 1, 1992.  In September 1995, EPA issued a NPDES Storm Water Multi-Sector General Permit for Industrial Activities ("1995 MSGP"). EPA re-issued the Multi-Sector General Permit for Industrial Activities on October 30, 2000 ("2000 MSGP"), 65 Fed. Reg. 64746.  EPA again re-issued the MSGP on September 29, 2008 ("2008 MSGP"), requiring all covered facilities to file a notice of intent ("NOI") for coverage under the 2008 permit by January 5, 2009. 73 Fed. Reg. 56572;  2008 MSGP, Table 1-2.

40.     In establishing these regulations, EPA cited abundant data showing the harmful effects of stormwater runoff on rivers, streams, and coastal areas across the nation. In particular, EPA found that runoff from industrial facilities contained elevated pollution levels. 55 Fed. Reg. 47990, 47991 (Nov. 16, 1990).

41.     EPA has not delegated authority to the Commonwealth of Massachusetts to implement a NPDES permitting program under the Clean Water Act.  Therefore, EPA is the NPDES permitting authority in Massachusetts.

42.     The MSGP is issued by EPA pursuant to Sections 402(a) and 402(p) of the CWA and regulates stormwater discharges from industrial facilities.  33 U.S.C. §§ 1342(a), 1342(p). In order to discharge stormwater lawfully, industrial dischargers must obtain coverage under the MSGP and comply with its terms.

43.     Industrial dischargers are required to file a complete and accurate Notice of Intent ("NOI") to be covered by the MSGP.

44.     Industrial dischargers must also develop and implement a Stormwater Pollution Prevention Plan ("SWPPP") prior to filing an NOI.  The SWPPP must identify and

evaluate sources of pollutants associated with industrial discharges from the facility, and identify and implement effective Best Management Practices ("BMPs") to control pollutants in stormwater discharges in a manner that achieves the substantive requirements of the permit.

45.     Section 505(a)(1) of the CWA, 33 U.S.C. § 1365(a)(1), provides for citizen enforcement actions against any "person" who is alleged to be in violation of an "effluent standard or limitation . . . or an order issued by the Administrator or a State with respect to such a standard or limitation."

46.     Such enforcement action under CWA Section 505(a) includes an action seeking remedies for unauthorized discharge under Section 301 of the CWA, 33 U.S.C § 1311, as well as for violation of a permit condition under Section 402 of the CWA, 33 U.S.C. § 1342, and Section 505(f) of the CWA, 33 U.S.C. § 1365(f).

47.     Each separate violation of the Clean Water Act subjects the violator to a penalty of up to $27,500 per day per violation for all violations occurring before or on March 15, 2004, $32,500 per day per violation for all violations occurring after March 15, 2004, and $37,500 per day per violation for all violations occurring after January 12, 2009, pursuant to Sections 309(d) and 505(a) of the CWA, 33 U.S.C. §§ 1319(d), 1365(a) and 40 C.F.R. §§ 19.1 – 19.4.

**FACTS**

48.     Minichiello Bros. has operated and continues to operate a scrap metal recycling and processing facility at 2 Dexter Street, Everett, MA 02149 since at least July of 1957.

49.     Scrap It has operated and continues to operate a scrap metal recycling and processing facility at 431 Second Street, Everett, MA 02149  since at least April 21, 2005.

50.     Stormwater from the Dexter Street Facility has discharged and continues to discharge into storm drains on the Facility and/or near the facility and into the Everett storm drain system. These storm drains and other conveyances discharge into the Mystic River.

51.     Stormwater from the Second Street Facility has discharged and continues to discharge into storm drains on and/or near the Facility and into the Everett storm drain system.  These storm drains and other conveyances discharge into the Island End River and/or into the Mystic River.

52.     The primary activity at both the Dexter Street and Second Street Facilities falls under Standard Industrial Classification ("SIC") Code of 5093, the listed codes in Appendix D of the MSGP, and/or the activities listed in 40 C.F.R. § 122.26(b)(14).

53.     Minichiello Bros. has engaged and continues to engage in the following industrial operations at the Dexter Street Facility: assembling, breaking up, sorting, and wholesale distribution of car batteries, ferrous metals, such as iron and steel; and wholesale distribution, sorting, and processing, of nonferrous metals, including but not limited to scrap, and other recyclable materials, and shipping and receiving of materials. Minichiello Bros. Dexter Street Facility also takes in liquid wastes including used oil, gas, antifreeze and radioactive waste.

54.     Scrap It has engaged and continues to engage in the following industrial operations at the Second Street Facility: assembling, breaking up, sorting, and wholesale

distribution of ferrous metals, such as iron and steel; and wholesale distribution, sorting, and processing, of nonferrous metals, including but not limited to scrap, and other recyclable and miscellaneous scrap materials, and shipping and receiving of materials.

55.     The sources of pollutants associated with the industrial activities at the Dexter Street Facility include: scrap metal ferrous and non-ferrous outdoor storage areas, uncovered storage of car batteries and liquid waste, parking areas, shipping and receiving areas, loading and unloading areas, maintenance areas, onsite re-fueling of machinery, operations building, scrap metal and used appliance storage areas, and on-site material handling equipment such as forklifts.

56.     The sources of pollutants associated with the industrial activities at the Second Street Facility include: scrap metal ferrous and non-ferrous outdoor storage areas, parking areas, shipping and receiving areas, loading and unloading areas, maintenance areas, operations building, scrap metal and used appliance storage areas, and on-site material handling equipment such as forklifts.

57.     Pollutants present in stormwater discharged from the Dexter Street Facility therefore include, but are not limited to: toxic metals such as copper, iron, zinc, lead, cadmium, aluminum; petroleum products including oil, fuel, and grease; radioactive waste, antifreeze, transmission and brake fluids; nutrients; pathogens; trash; hydraulic fluids; acids and solvents; sediment and total suspended solids; pH-affecting substances; fugitive and other dust, dirt, and debris, and elevated temperature.

58.     Pollutants present in stormwater discharged from the Second Street Facility therefore include, but are not limited to: toxic metals such as copper, iron, zinc, lead, cadmium, and aluminum; petroleum products including oil, fuel, grease, transmission and

brake fluids; nutrients; organic matter; pathogens; trash; hydraulic fluids; acids and solvents; sediment and total suspended solids; pH-affecting substances; fugitive and other dust, dirt, and debris, and elevated temperature.

59.     The scrap metal piles at the Dexter Street Facility are uncovered, and therefore exposed to precipitation.

60.     While there is a white tent structure with open sides covering some scrap material at the Second Street Facility, there are also scrap metal piles at the Facility that are uncovered, and therefore exposed to precipitation.

61.     Materials associated with industrial activities are exposed to the elements at the Dexter Street Facility, including, but not limited to, light iron, heavy steel, copper, industrial aluminum waste, metal turnings and cutouts, brass, stainless steel, electric motors, lead, batteries, AC compressors, auto radiators, condensers, motor parts, heat exchangers, zinc, wire, cable, nickel alloys, junk cars, precious metals, stoves, aluminum ladders, automotive engines, grocery carts, oven ranges, tire rims, tanks, refrigerators, air conditoners, and furnaces contaminated with industrial pollutants. These materials contain or are contaminated with the pollutants listed at paragraph 57 above.

62.     Materials associated with industrial activities are exposed to the elements at the Second Street Facility, including, but not limited to, light iron, heavy steel, copper, industrial aluminum waste, brass, stainless steel, electric motors, lead, batteries, AC compressors, auto radiators, zinc, insulated wire, nickel alloys, junk cars, precious metals, and furnaces that are contaminated with industrial pollutants.  These materials contain or are contaminated with the pollutants listed at paragraph 58 above.

63.     The scrap material at the Dexter Street Facility is sprayed down with water during certain conditions.

64.     The scrap material at the Second Street Facility is sprayed down with water during certain conditions.

65.     Minichiello Bros. has operated and continues to operate trucks and other vehicles that enter and exit the Dexter Street Facility via driveways or access roads.

66.     The vehicles referenced in paragraph 65, above, transport pollutants, including hydrocarbons (oil, grease, fuel), metals, total suspended solids, sediment, road salt (which in turn contains chlorides, sodium, and impurities), onto and off of the Dexter Street Facility into storm drains and other conveyances near the Facility and into the waters of the United States.

67.     Scrap It has operated and continues to operate trucks and other vehicles that enter and exit the Second Street Facility via driveways or access roads.

68.     The vehicles referenced in paragraph 67, above, transport pollutants, including hydrocarbons (oil, grease, fuel), metals, total suspended solids, sediment, road salt (which in turn contains chlorides, sodium, and impurities), onto and off of the Second Street Facility into storm drains and other conveyances near the Facility and into the waters of the United States.

69.     During every measurable precipitation event and every instance of snowmelt, water flows onto and over exposed materials and accumulated pollutants at the Dexter Street Facility, generating stormwater runoff.

70.     During every measurable precipitation event and every instance of snowmelt,
water flows onto and over exposed materials and accumulated pollutants at the Second
Street Facility, generating stormwater runoff.

71.     Stormwater runoff from the Dexter Street Facility is contaminated with pollutants
from the activities referenced at paragraphs 53, 55, 57, 59, 61, 65, 66, and 69. Stormwater
runoff from the Facility is conveyed via the City of Everett stormwater system and/or
other conveyances into the Mystic River.  Stormwater runoff from the Facility is not
treated to remove the pollutants referenced at paragraph 57 above, before it is discharged
into the Mystic River.

72.     Stormwater runoff from the Second Street Facility is contaminated with pollutants
from the activities referenced at paragraphs 54, 56, 58, 60, 62, 64, 67, 68, and 70.
Stormwater runoff from the Facility is conveyed via the City of Everett stormwater
system and/or other conveyances into the Mystic and/or Island End Rivers.  Stormwater
runoff from the Facility is not treated to remove the pollutants referenced at paragraph
58, above, before it is discharged into the Mystic and/or Island End Rivers.

73.     EPA considers precipitation above 0.1 inches during a 24 hour period a
measurable precipitation event.  40 C.F.R. § 122.26(c)(i)(E)(6).

74.     A measurable precipitation event is sufficient to generate runoff from the Dexter
Street Facility.

75.     A measurable precipitation event is sufficient to generate runoff from the Second
Street Facility.

76.     The MSGP specifically references snowmelt as a form of stormwater discharge
that must be addressed by a discharger in its control measures. MSGP Part 2.1.2.1.

77.     Minichiello Bros. and Scrap It have discharged and continue to discharge stormwater containing pollutants from the activities at the Facilities referenced at paragraphs 48-75, above, via the City of Everett's storm drain system and other conveyances into the Island End River and/or Mystic River.

78.     The Island End River flows into the Mystic River, which flows into Boston Harbor, which flows into the Atlantic Ocean, all of which are "waters of the United States," as defined in 40 C.F.R. § 122.2, and therefore, "navigable waters," as defined in 33 U.S.C. § 1362(7).

79.     Massachusetts' Impaired Waters List identifies the Mystic River and the Island End River as an impaired water body pursuant to Section 303(d) of the CWA, 33 U.S.C. § 1313(d).[3]

80.     Minichiello Bros. has not met and continues to fail to meet the requirements to obtain authorization to discharge stormwater under the MSGP or another valid NPDES permit for the Dexter Street Facility.

81.     Scrap It has not met and continues to fail to meet the requirements to obtain authorization to discharge stormwater under the MSGP or another valid NPDES permit for the Second Street Facility.

82.     Minichiello Bros. has not posted a complete and accurate SWPPP on the Internet for the Dexter Street Facility.

83.     Scrap It has not posted a complete and accurate SWPPP on the Internet for the Second Street Facility.

---

[3] MassDEP, Integrated List of Waters (1995), *available at* http://www.mass.gov/dep/water/resources/08list2.pdf (last accessed Sept. 30, 2010); EPA, Listed Water Information, Mystic River (2006), *available at* http://oaspub.epa.gov/tmdl/enviro.control?p_list_id=MA71-03&p_cycle=2006 (last visited September 30, 2010).

84.     Minichiello has failed to install and implement control measures to meet numeric and non-numeric effluent limitations in Part 2.1 of the MSGP at the Dexter Street Facility.

85.     Scrap It has failed to install and implement control measures to meet numeric and non-numeric effluent limitations in Part 2.1 of the MSGP at the Second Street Facility.

86.     Minichiello has failed to develop and implement a complete and accurate SWPPP that meets the requirements of MSGP Part 5, before submitting an NOI for permit coverage for the Dexter Street Facility

87.     Scrap It has failed to develop and implement a complete and accurate SWPPP that meets the requirements of MSGP Part 5, before submitting an NOI for permit coverage for the Second Street Facility.

88.     Minichiello Bros. has not filed a complete and accurate NOI with EPA. Minichiello Bros. filed an NOI with EPA on August 9, 2010 for the Dexter Street Facility.[4]  This NOI was incomplete and/or inaccurate, and a complete and accurate NOI had not been posted as of today's date.[5]

89.     Scrap It has not filed an NOI for the Second Street Facility.[6]

90.     Minichiello Bros., Inc. is not authorized to discharge from the Dexter Street Facility under the MSGP until all requirements of MSGP Part 1.3 have been fulfilled and sixty days has passed since the EPA posts the NOI. MSGP Part 1.3, table 1-2. [7]

---

[4] According to the database at EPA's website, www.epa.gov/npdes/noisearch.

[5] See www.epa.gov/npdes/noisearch.

[6] No NOI had been posted publicly on EPA's website, www.epa.gov/npdes/noisearch as of Oct. 7, 2010.

[7] Pursuant to MSGP Part 1.3, table 1-2, Minichiello Bros., Inc. is considered an "Other Eligible Discharger." Since Minichiello Bros., Inc. has not posted its SWPPP on the internet, it must wait sixty days after EPA posts its NOI before it is authorized to discharge.

91.     Scrap It is not authorized to discharge from the Second Street Facility under the

MSGP until all requirements of MSGP Part 1.3 have been fulfilled and sixty days has

passed since the EPA posts the NOI. MSGP Part 1.3, table 1-2.

## CLAIMS FOR RELIEF

### First Cause of Action:  Failure to Obtain and Comply with a Permit for Industrial Discharges

92.     Plaintiff incorporates the allegations contained in the above paragraphs as though

fully set forth herein.

93.     Minichiello Bros., Inc. and Scrap It are industrial dischargers with a primary

industrial activity at each of their Facilities falling under an SIC Code of 5093 or another

activity listed under Appendix D of the 2008 MSGP or 40 C.F.R. § 122.26(b)(14).

94.     Minichiello Bros., Inc. and Scrap It are required to obtain permit coverage for

both Facilities and comply with the MSGP pursuant to Section 402 of the Clean Water

Act, 33 U.S.C. § 1342.

95.     Minichiello Bros., Inc. and Scrap It have failed and continues to fail to obtain

permit coverage and comply with the MSGP pursuant to Section 402 of the CWA, 33

U.S.C. § 1342 for both Facilities.

96.     Each and every day since at least October 1, 1992, on which Minichiello has not

obtained permit coverage for the Dexter Street Facility and complied fully with the

MSGP is a separate and distinct violation of Section 402 of the CWA, 33 U.S.C. § 1342.

97.     Each and every day since at least April 21, 2005, on which Scrap It has not

obtained permit coverage for the Second Street Facility and complied fully with the

MSGP is a separate and distinct violation of Section 402 of the CWA, 33 U.S.C. § 1342.

**Second Cause of Action:  Unauthorized Discharge of Pollutants Into Waters of the United States**

98.     Plaintiff incorporates the allegations contained in the above paragraphs as though fully set forth herein.

99.     Section 301(a) of the CWA, 33 U.S.C. § 1311(a), prohibits the discharge of any pollutant from any "point source" to waters of the United States, except for discharges in compliance with a NPDES permit issued pursuant to Section 402(p) of the CWA, 33 U.S.C. § 1342(p).

100.    In order to be authorized to discharge lawfully under the MSGP, a facility must meet requirements set forth in Part 1.3.1 of the MSGP.  These include:

    (a)  meeting the eligibility requirements in Part 1.1 of the MSGP;

    (b)  selecting, designing, installing, and implementing control measures in accordance with MSGP Part 2.1;

    (c)  developing a complete and accurate SWPPP according to MSGP Part 5; and

    (d)  filing a complete and accurate NOI to seek coverage under the MSGP.

101.    Minichiello Bros. and Scrap It are industrial dischargers with a primary SIC Code of 5093 and/or another activity listed under Appendix D of the MSGP or 40 C.F.R. § 122.26(b)(14),which means they are obligated to apply for coverage under the MSGP or other legal authorization for each Facility.

102.    Minichiello Bros., Inc.'s and Scrap It's industrial activities at the Facilities have resulted and continue to result in "stormwater discharge associated with industrial activity" within the meaning of 40 C.F.R. § 122.26(b)(14) into the Everett stormwater systems and into the Island End River and/or the Mystic River on every day of precipitation greater than 0.1 inches and every instance of snowmelt.

103.    Minichiello Bros., Inc. and Scrap It's discharges of stormwater associated with industrial activity ("industrial stormwater discharges") at the Facilities are discharges of pollutants within the meaning of 33 U.S.C. § 1362(12).  Minichiello and Scrap It's industrial stormwater discharges at the Facilities are "point source" discharges into waters of the United States.

104.    Stormwater discharges at the Facilities have caused and continue to cause discharges of pollutants to waters of the United States in violation of Section 301(a) of the CWA, 33 U.S.C. § 1311(a).

105.    Since at least October 1, 1992, Minichiello has discharged and continues to discharge industrial stormwater without meeting the authorization requirements to be covered under a valid NPDES permit as required by CWA Section 301(a), 33 U.S.C. § 1311(a), and Section 402(p)(2)(B) of the CWA, 33 U.S.C. § 1342(p)(2)(B).

106.    Since at least April 21, 2005 Scrap It has discharged and continues to discharge industrial stormwater without meeting the authorization requirements to be covered under a valid NPDES permit as required by Section 301(a) of the CWA, 33 U.S.C. § 1311(a), and Section 402(p)(2)(B) of the CWA, 33 U.S.C. § 1342(p)(2)(B).

107.    Since at least October 1, 1992 Minichiello Bros. has discharged and continues to discharge pollutants to an impaired waterbody from the Dexter Street Facility, causing or contributing to an exceedance of water quality standards. Such discharges of pollutants have caused or contributed to, and continue to cause or contribute to, an exceedance of water quality standards.

108.    Since at least April 21, 2005, Scrap It has discharged and continues to discharge pollutants to an impaired waterbody.  Such discharges of pollutants have caused or

contributed to, and continue to cause or contribute to, an exceedance of water quality standards.

109.    Each and every day since at least October 1, 1992 on which Minichiello Bros. has discharged and continues to discharge industrial stormwater from the Dexter Street Facility without authorization under a valid NPDES permit constitutes a distinct violation of CWA Section 301(a), 33 U.S.C. § 1311(a) and Section 402 of the CWA, 33 U.S.C. § 1342.

110.    Each and every day since at least April 21, 2005 on which Scrap It has discharged and continues to discharge industrial stormwater from the Second Street Facility without authorization under a valid NPDES permit constitutes a distinct violation of Section 301(a) of the CWA, 33 U.S.C. § 1311(a) and Section 402 of the CWA, 33 U.S.C. § 1342.

**Third Cause of Action:  Failure to Submit to EPA a Complete Notice of Intent to be Covered under the MSGP in Violation of the MSGP and the Clean Water Act. (Violations of MSGP Part 1.3.1)**

111.    Plaintiff incorporates the allegations contained in the above paragraphs as though fully set forth herein.

112.    Industrial dischargers are required to submit to EPA a complete and accurate NOI to be covered under the MSGP pursuant to MSGP Part 1.3.1.

113.    Minichiello Bros. has failed and continues to fail to submit to EPA a complete and accurate NOI to be covered under the MSGP pursuant to MSGP Part 1.3.1 for the Dexter Street Facility. [8]

---

[8]  Minichiello submitted an NOI application to EPA on August 9, 2010 and received a form letter from EPA in response, also dated August 9, 2010. As alleged above, this NOI was incomplete and/or inaccurate.

114.    Scrap It has failed and continues to fail to submit to EPA a complete and accurate NOI to be covered under the MSGP pursuant to MSGP Part 1.3.1 for the Second Street Facility. [9]

115.    Minichiello Bros. has failed and continues to fail to develop and implement a complete and accurate SWPPP meeting the requirements of MSGP Part 5 before submitting an NOI for coverage for the Dexter Street Facility.

116.    Scrap It has failed and continues to fail to develop and implement a complete and accurate SWPPP meeting the requirements of MSGP Part 5 before submitting an NOI for coverage for the Second Street Facility.

117.    No SWPPP is posted on line at EPA's website for the Dexter Street Facility as of today's date.

118.    No SWPPP is posted on line at EPA's website for the Second Street Facility as of today's date.

119.    Each and every day since at least October 1, 1992 on which Minichiello Bros. has not filed a complete and accurate NOI for the Dexter Street Facility is a separate and distinct violation of Section 301(a), 33 U.S.C. § 1311(a), and Section 402 of the CWA, 33 U.S.C. § 1342.

120.    Each and every day since at least April 21, 2005 on which Scrap It has not filed a complete and accurate NOI for the Second Street Facility, is a separate and distinct violation of Section 301(a), 33 U.S.C. § 1311(a), and Section 402 of the CWA, 33 U.S.C. § 1342.

---

[9]   Minichiello submitted an NOI application to EPA on August 9, 2010 and received a form letter from EPA in response, also dated August 9, 2010. As alleged above, this NOI was incomplete and/or inaccurate.

**Fourth Cause of Action: Failure to Comply with MSGP Requirements for New Dischargers to an "Impaired Water" (Violations of MSGP Part 1.1.4.7)**

121.    Plaintiff incorporates the allegations contained in the above paragraphs as though fully set forth herein.

122.    Both Minichiello Bros. and Scrap It are new dischargers under the MSGP as they have not previously sought coverage for either Facility under the previous MSGP permits EPA has issued.

123.    The Mystic River is identified as impaired due to various pollutants, including metals, oil and grease, organic enrichment/oxygen depletion, inorganics, pathogens, toxic organics, taste, color, odor, and ammonia.

124.    Minichiello Bros. has discharged and continues to discharge stormwater contaminated with some of these pollutants, such as metals, oil, grease, solvents, nutrients, pathogens, dissolved solids, trash, and other pollutants associated with operations at its Dexter Street Facility through stormwater contact with the Facility's industrial discharges.

125.    Scrap It has discharged and continues to discharge stormwater contaminated with some or all of these pollutants, such as metals, oil, grease, solvents, nutrients, pathogens, dissolved solids, trash, and other pollutants associated with operations at its Second Street Facility through stormwater contact with the Facility's industrial discharges.

126.    New dischargers to impaired waters are required to take one of the following actions prior to obtaining permit coverage:

> (a)  prevent all exposure of pollutants for which a water body is impaired pursuant to MSGP Part 1.1.4.7(a); or

(b) document that the pollutants for which a water body is impaired are not present at the facility and retain documentation for this finding with a SWPPP pursuant to MSGP Part 1.1.4.7(b); or

(c) provide EPA Region 1 with data to support a showing that the discharge is not expected to cause or contribute to an exceedance of a water quality standard by showing that the discharge of the pollutant for which the water body is impaired will meet instream water quality criteria at the point of discharge to the waterbody and retain such data in a SWPPP pursuant to MSGP Part 1.1.4.7(b)(i).

127.    Both Minichiello Bros. and Scrap It have failed to and continue to fail to prevent all exposure of pollutants at the Facilities for which the Mystic River is impaired pursuant to MSGP Part 1.1.4.7(a).

128.    Both Minichiello Bros. and Scrap It have failed and continue to fail to document that the pollutants for which the Mystic River is impaired are not present at the Facilities, nor have Minichiello Bros. and Scrap It retained documentation for this finding with a SWPPP for each Facility, pursuant to MSGP Part 1.1.4.7(c).

129.    Both Minichiello Bros. and Scrap It have not provided and continue to fail to provide EPA Region 1 with data supporting a showing that the discharge from either Facility is not expected to cause or contribute to an exceedance of a water quality standard by showing that the discharge of the pollutant for which the Mystic River is impaired will meet instream water quality criteria at the point of discharge to the Mystic River nor have either Minichiello Bros. or Scrap It retained such data in a SWPPP at either Facility, pursuant to MSGP Part 1.1.4.7(c)(i).

130.     Therefore, Minichiello Bros. and Scrap It have not met and continue to fail to meet the permit requirements applicable to new dischargers for both Facilities.

131.     Each and every day since at least October 1, 1992 on which Minichiello Bros. has failed and continues to fail to comply with the MSGP requirements for new dischargers into impaired waters at the Dexter Street Facility constitutes a separate and distinct violation of Section 301(a) of the Clean Water Act, 33 U.S.C. § 1311(a) and Section 402 of the Clean Water Act, 33 U.S.C. § 1342.

132.     Each and every day since at least April 21, 2005 on which Scrap It has failed and continues to fail to comply with the MSGP requirements for new dischargers into impaired waters at the Second Street Facility constitutes a separate and distinct violation of Section 301(a) of the CWA, 33 U.S.C. § 1311(a) and Section 402 of the CWA, 33 U.S.C. § 1342.

**Fifth Cause of Action:  Failure to Develop and Implement a SWPPP in Violation of the MSGP and the Clean Water Act.  (Violations of MSGP Part 5)**

133.     Plaintiff incorporates the allegations contained in the above paragraphs as though fully set forth herein.

134.     Industrial dischargers are required to develop and implement a complete and accurate SWPPP and to retain a copy of the SWPPP at the facility at all times together with all other required inspection, monitoring, and certification records that demonstrate full compliance with the Permit, pursuant to MSGP Part 5.

135.      Minichiello Bros. has failed and continues to fail to develop and implement a complete and accurate SWPPP prior to submitting an NOI for coverage for the Dexter Street Facility.

136.    Scrap It has failed and continues to fail to develop and implement a complete and accurate SWPPP prior to submitting an NOI for coverage for the Second Street Facility.

137.    Minichiello Bros.' ongoing failure to develop and implement complete and accurate SWPPPs for the Dexter Street Facility is evidenced by, *inter alia*, the outdoor uncovered storage of industrial materials, including waste materials, without appropriate Best Management Practices ("BMPs"); the continued exposure of significant quantities of industrial material to precipitation and snowmelt; the failure to either treat stormwater prior to discharge or to implement effective containment practices; and the continued discharge of stormwater pollutants.

138.    Scrap It's ongoing failure to develop and implement complete and accurate SWPPPs for the Second Street Facility is evidenced by, *inter alia*, the outdoor uncovered storage of industrial materials, including waste materials, without appropriate Best Management Practices ("BMPs"); the continued exposure of significant quantities of industrial material to precipitation and snowmelt; the failure to either treat stormwater prior to discharge or to implement effective containment practices; and the continued discharge of stormwater pollutants.

139.    Minichiello Bros. has failed and continues to fail to retain copies of a complete and accurate SWPPP and all other required documentation at the Dexter Street Facility at all times, pursuant to MSGP Part 5.4.

140.    Scrap It has failed and continues to fail to retain copies of a complete and accurate SWPPP and all other required documentation at the Second Street Facility at all times, pursuant to MSGP Part 5.4.

141.    Each and every day since at least October 1, 1992 on which Minichiello Bros. has failed and continues to fail to develop and fully implement a complete and accurate SWPPP for the Dexter Street Facility and to keep such SWPPP on file at the Facility together with all other required documentation, is a separate and distinct violation of Section 301(a), 33 U.S.C. § 1311(a), and Section 402 of the CWA, 33 U.S.C. § 1342.

142.    Each and every day since at least April 21, 2005 on which Scrap It has failed and continues to fail to develop and fully implement a complete and accurate SWPPP for the Second Street Facility and to keep such SWPPP on file at the Facility together with all other required documentation, is a separate and distinct violation of Section 301(a) of the CWA, 33 U.S.C. § 1311(a), and Section 402 of the CWA, 33 U.S.C. § 1342.

**Sixth Cause of Action:  Failure to Take Control Measures and Meet Water Quality-Based Effluent Limitations in Violation of the MSGP and the Clean Water Act.  (Violations of MSGP Part 2**)

143.    Plaintiff incorporates the allegations contained in the above paragraphs as though fully set forth herein.

144.    Industrial dischargers are required to take control measures and meet water quality-based effluent limitations pursuant to MSGP Part 2.

145.    Industrial dischargers must "minimize" exposure of manufacturing, processing, and material storage areas to precipitation, snowmelt, and runoff meaning "reduce and/or eliminate" such exposures "to the extent achievable using control measures, including best management practices, that are technologically available and economically practicable and achievable in light of best industry practice," pursuant to MSGP Part 2.1.

146.    The control measures must meet the standards set by Best Practicable Control Technology/Best Available Technology Economically Achievable/Best Conventional

Pollutant Control Technology ("BPT/BAT/BCT") standards and must comply with all non-numeric effluent limits set forth at Part 2.1.2 of the MSGP, including requirements for good housekeeping, maintenance, spill prevention and response, erosion and sediment control, salt storage, employee training, prevention of discharge of waste, garbage, and floatable debris to receiving waters, eliminating non-stormwater discharges, and dust generation and vehicle tracking of industrial materials. MSGP Part 2.1.1.

147.    The control measures must "divert, infiltrate, reuse, contain, or otherwise reduce stormwater runoff, to minimize pollutants in your facility's discharges." MSGP Part 2.1.2.6.

148.    Industrial dischargers must select, design, install, and implement the control measures referenced in paragraphs 132-135 above in accordance with good engineering practices and manufacturer's specifications.  MSGP Part 2.1. The control measures must be modified if the facility finds that it is not achieving the effect of minimizing pollutant discharges. MSGP Part 2.1.

149.    Both the Dexter Street and Second Street Facilities have operated and continue to operate in a manner that exposes industrial materials to pollutants without implementing BMPs that achieve the BPT/BAT/BCT standard and comply with all non-numeric effluent limitations.

150.    Each and every day since at least October 1, 1992 on which Minichiello Bros. has operated and continues to operate the Facility without implementing BMPs at the Dexter Street Facility that achieve the BPT/BAT/BCT standard, and comply with all non-numeric effluent limitations pursuant to MSGP Part 2.1, is a separate and distinct

violation of Section 301(a) of the CWA, 33 U.S.C. § 1311(a), and Section 402 of the CWA, 33 U.S.C. § 1342.

151.    Each and every day since at least April 21, 2005 on which Scrap It has operated and continues to operate the Facility without implementing BMPs at the Second Street Facility that achieve the BPT/BAT/BCT standard, and comply with all non-numeric effluent limitations pursuant to MSGP Part 2.1, is a separate and distinct violation of Section 301(a) of the CWA, 33 U.S.C. § 1311(a), and Section 402 of the CWA, 33 U.S.C. § 1342.

152.    Discharges from the Facilities must be controlled as necessary to meet applicable water quality standards. MSGP Part 2.2.1.

153.    Since at least October 1, 1992, Minichiello Bros., Inc.'s Dexter Street Facility has discharged pollutants listed at paragraph 54 and 55, above, into the Mystic River. MassDEP has listed these rivers as impaired for metals, oil and grease, organic enrichment/oxygen depletion, inorganics, pathogens, toxic organics, taste, color, odor, and ammonia.

154.    Since at least April 21, 2005, Scrap It's Second Street Facility has discharged pollutants listed at paragraph 54 and 55, above, into the Island End River and the Mystic River. MassDEP has listed these rivers as impaired for metals, oil and grease, organic enrichment/oxygen depletion, inorganics, pathogens, toxic organics, taste, color, odor, and ammonia.

155.    The discharges from both the Minichiello Bros. and Scrap It Facilities are not controlled as necessary to meet applicable water quality standards.

156.    Each and every day since at least October 1, 1992 on which Minichiello Bros. has failed to implement control measures and meet water-quality based effluent limitations at the Dexter Street Facility in violation of the MSGP is a separate and distinct violation of Section 301(a) of the CWA, 33 U.S.C. § 1311(a) and Section 402 of the CWA, 33 U.S.C. § 1342.

157.    Each and every day since at least April 21, 2005 on which Scrap It has failed to implement control measures and meet water-quality based effluent limitations at the Second Street Facility in violation of the MSGP is a separate and distinct violation of Section 301(a) of the CWA, 33 U.S.C. § 1311(a) and Section 402 of the CWA, 33 U.S.C. § 1342.

**Seventh Cause of Action:  Failure to Conduct Facility Inspections in Violation of the MSGP and the Clean Water Act.  (Violations of MSGP Part 4)**

158.    Plaintiff incorporates the allegations contained in the above paragraphs as though fully set forth herein.

159.    Industrial dischargers are required to conduct and document routine facility inspections pursuant to MSGP Part 4.1, in no cases less frequently than once per quarter.

160.    Both Minichiello Bros. and Scrap It have failed and continue to fail to conduct comprehensive routine facility inspections at either Facility, pursuant to MSGP Part 4.1.

161.    Each and every day since at least October 1, 1992 on which Minichiello Bros. has operated and continues to operate without conducting routine facility inspections at the Dexter Street Facility, pursuant to MSGP Part 4.1, is a separate and distinct violation of the MSGP and Section 301(a) of the CWA, 33 U.S.C. § 1311(a), and Section 402 of the CWA, 33 U.S.C. § 1342.

162.    Each and every day since at least April 21, 1995 on which Scrap It has operated and continues to operate without conducting routine facility inspections at the Second Street Facility, pursuant to MSGP Part 4.1, is a separate and distinct violation of the MSGP and Section 301(a) of the CWA, 33 U.S.C. § 1311(a), and Section 402 of the CWA, 33 U.S.C. § 1342.

163.    Industrial dischargers are required to collect a wet-weather stormwater sample from each outfall at the facility once each quarter throughout the permit term, to assess such sample for the presence of indicators of stormwater pollution, and to retain documentation of such visual assessments, pursuant to MSGP Part 4.2.

164.    Both Minichiello Bros. and Scrap It have failed and continue to fail to collect a wet-weather stormwater samples from each outfall at either Facility, to inspect the sample for indicators of pollution at either Facility, and to document such assessment for either Facility, pursuant to MSGP Part 4.2.

165.    Each and every day since at least October 1, 1992 on which Minichiello Bros. has operated and continues to operate the Dexter Street Facility without conducting required wet-weather sampling and visual assessment and retaining documentation pursuant to MSGP Part 4.2 is a separate and distinct violation of Section 301(a) of the CWA, 33 U.S.C. § 1311(a), and Section 402 of the CWA, 33 U.S.C. § 1342.

166.    Each and every day since at least April 21, 2005 on which Scrap It has operated and continues to operate the Second Street Facility without conducting required wet-weather sampling and visual assessment and retaining documentation pursuant to MSGP Part 4.2 is a separate and distinct violation of Section 301(a) of the CWA, 33 U.S.C. § 1311(a), and Section 402 of the CWA, 33 U.S.C. § 1342.

167.    Industrial dischargers are required to conduct annual comprehensive site inspections, to document such annual inspections, and to submit the results of such inspections to EPA, pursuant to MSGP Part 4.3.

168.    Both Minichiello Bros. and Scrap It have failed and continue to fail to conduct and document such comprehensive site inspections for the Facilities and to submit the results of such inspections to EPA for either Facility, pursuant to MSGP Part 4.3.

169.    Each and every day since at least October 1, 1992 on which Minichiello Bros. has operated and continues to operate the Dexter Street Facility without conducting and documenting the required comprehensive site inspection and submitting such documentation to EPA pursuant to MSGP Part 4.3 is a separate and distinct violation of Section 301(a) of the CWA, 33 U.S.C. § 1311(a), and Section 402 of the CWA, 33 U.S.C. § 1342.

170.    Each and every day since at least April 21, 2005 on which Scrap It has operated and continues to operate the Second Street Facility without conducting and documenting the required comprehensive site inspection and submitting such documentation to EPA pursuant to MSGP Part 4.3 is a separate and distinct violation of Section 301(a), 33 U.S.C. § 1311(a) of the CWA, and Section 402 of the CWA, 33 U.S.C. § 1342.

**Eighth Cause of Action:  Failure to Comply with the Required Monitoring and Sampling Procedures in Violation of the MSGP and the Clean Water Act. (Violations of MSGP Part 6**)

171.    Plaintiff incorporates the allegations contained in the above paragraphs as though fully set forth herein.

172.    Industrial dischargers are required to comply with the required monitoring and sampling procedures pursuant to MSGP Part 6.

173.    Both Minichiello Bros. and Scrap It have failed and continue to fail to comply with the required benchmark monitoring and sampling procedures for either Facility, pursuant to MSGP Part 6.2.1.  As a result, both Minichiello Bros. and Scrap It have also failed to take any required review of control measures, additional monitoring, and corrective actions that would have been triggered by benchmark monitoring at either Facility.

174.    Each and every day since at least October 1, 1992 on which Minichiello Bros. has operated and continues to operate the Dexter Street Facility without complying with the required benchmark monitoring and sampling procedures pursuant to MSGP Part 6 is a separate and distinct violation of the MSGP and Section 301(a), 33 U.S.C. § 1311(a), and Section 402 of the CWA, 33 U.S.C. § 1342.

175.    Each and every day since at least April 21, 2005 on which Scrap It has operated and continues to operate the Second Street Facility without complying with the required benchmark monitoring and sampling procedures pursuant to MSGP Part 6 is a separate and distinct violation of the MSGP and Section 301(a) of the CWA, 33 U.S.C. § 1311(a), and Section 402 of the CWA, 33 U.S.C. § 1342.

176.    Both Minichiello Bros. and Scrap It have failed and continue to fail to comply with the required impaired waters monitoring pursuant to MSGP Part 6.2.4 for both Facilities.

177.    Each and every day since at least October 1, 1992 on which Minichiello Bros. has failed and continues to fail to comply with the required impaired waters monitoring for the 285 Second Street Facility, pursuant to MSGP Part 6.2.4, is a separate and distinct

violation of the MSGP and Section 301(a) of the CWA, 33 U.S.C. § 1311, and Section 402 of the CWA, 33 U.S.C. § 1342.

178.   Each and every day since at least April 21, 2005 on which Scrap It has failed and continues to fail to comply with the required impaired waters monitoring for the Second Street Facility, pursuant to MSGP Part 6.2.4, is a separate and distinct violation of the MSGP and Section 301(a) of the CWA, 33 U.S.C. § 1311, and Section 402 of the CWA, 33 U.S.C. § 1342.

**Ninth Cause of Action:  Failure to Carry Out the Required Reporting and Recordkeeping in Violation of the MSGP and the Clean Water Act. (Violations of MSGP Part 7)**

179.   Plaintiff incorporates the allegations contained in the above paragraphs as though fully set forth herein.

180.   Industrial dischargers are required to carry out the required reporting and recordkeeping pursuant to MSGP Part 7.

181.   Reporting and recordkeeping requirements under the MSGP Part 7 include:

(a)  Reporting monitoring data to EPA pursuant to MSGP Part 7.1;

(b)  Preparing and submitting an annual report containing specified information to EPA, pursuant to MSGP Part 7.2;

(c)  Submitting an exceedance report to EPA if follow-up monitoring after a benchmark exceedance exceeds a numeric effluent limit, pursuant to MSGP Part 7.3;

(d)  Completing additional reporting and submitting such reports to the appropriate EPA office, including: reporting of any noncompliance within the specified time period; notifying EPA as soon as the facility has knowledge of

a leak, spill, or other release containing oil or a hazardous substance in a reportable quantity; notifying EPA of certain planned changes to the facility; submitting a complete and accurate NOI in the event of transfer of ownership and operation; and correcting or supplementing facts in the facility's NOI or any other report, pursuant to MSGP Part 7.4; and

(e) Retaining copies of the SWPPP including any modifications, along with additional documentation required under Part 5.4, all reports and certifications required by the permit, monitoring data, and records of data used to complete the NOI, for a period of at least 3 years from the date on which permit coverage expires or is terminated. MSGP Part 7.5.

182.   Both Minichiello Bros. and Scrap It have failed and continue to fail to carry out the required reporting and recordkeeping pursuant to MSGP Part 7 for both Facilities.

183.   Each and every day since at least October 1, 1992 on which Minichiello Bros. has operated and continues to operate the Dexter Street Facility without carrying out the required reporting and recordkeeping for each Facility pursuant to MSGP Part 7, is a separate and distinct violation of the MSGP and Section 301(a), 33 U.S.C. § 1311(a), and Section 402 of the CWA, 33 U.S.C. § 1342.

184.   Each and every day since at least April 21, 2005 on which Scrap It has operated and continues to operate the Second Street Facility without carrying out the required reporting and recordkeeping for each Facility pursuant to MSGP Part 7, is a separate and distinct violation of the MSGP and Section 301(a), 33 U.S.C. § 1311(a), and Section 402 of the CWA, 33 U.S.C. § 1342.

**Tenth Cause of Action:  Failure to Comply with Sector-Specific Requirements of in Violation of the MSGP and the Clean Water Act.  (Violations of MSGP Part 8**)

185.    Plaintiff incorporates the allegations contained in the above paragraphs as though fully set forth herein.

186.    Minichiello Bros. and Scrap It, Inc. engage in scrap metal recycling and waste recycling activities falling under SIC Code 5093 and MSGP Part 8, Subpart N.

187.    Scrap recycling and waste recycling facilities must comply with the requirements of MSGP Part 8 Subpart N-Scrap Recycling and Waste Recycling Facilities ("MSGP Part 8 Subpart-N").  Such requirements include:

> (a)  implementing additional technology-based effluent limitations (MSGP Part 8.N.3);
>
> (b)  meeting additional SWPPP and inspection requirements (MSGP Part 8.N.4 and Part 8.N.5);
>
> (c)  monitoring stormwater discharges for compliance with the benchmark pollutant limitations applicable specifically to metal recycling facilities (MSGP Part 8.N.6); and
>
> (d)  minimizing contact of stormwater runoff with stockpiled materials, processed materials and non-recyclable wastes through various control measures such as permanent or semi-permanent covers, oil and water separators, sumps and dry absorbents for areas where potential sources of residual fluids are stockpiled (MSGP Part 8.N.3.1.2).

188.    Minichiello Bros. and Scrap It have not implemented and continue to fail to implement additional technology-based effluent limitations pursuant to MSGP Part 8 Subpart-N, pursuant to MSGP Part 8.N.3, at both Facilities.

189.    Minichiello Bros. and Scrap It have not met and continue to fail to meet additional SWPPP requirements pursuant to MSGP Part 8 Subpart-N, pursuant to MSGP Part 8.N.4, at both Facilities.

190.    Minichiello Bros. and Scrap It have not met, and continue to fail to meet the additional inspection requirements of the MSGP Part 8 Subpart-N, pursuant to MSGP Part 8.N.5 at both Facilities.

191.    Minichiello Bros. and Scrap It have failed and continue to fail to monitor both Facilities' stormwater discharges for compliance with the benchmark pollutant limitations applicable specifically to metal recycling facilities of the MSGP Part 8 Subpart-N, pursuant to MSGP Part 8.N.6.

192.    Both Minichiello Bros. and Scrap It have failed and continue to fail to minimize either Facility's contact of stormwater runoff with stockpiled materials, processed materials, and non-recyclable wastes through various control measures such as permanent or semi-permanent covers, oil and water separators, sumps and dry absorbents for areas where potential sources of residual fluids are stockpiled pursuant to MSGP Subpart-N, pursuant to MSGP Part 8.N.3.1.2.

193.    Each and every day since at least October 1, 1992 on which Minichiello Bros. has operated and continues to operate the Dexter Street Facility without carrying out required sector-specific activities pursuant to MSGP Part 8, Subpart N is a separate and distinct violation of the MSGP and Section 301(a), 33 U.S.C. § 1311(a), and Section 402 of the CWA, 33 U.S.C. § 1342.

194.    Each and every day since at least April 21, 2005 on which Scrap It has operated and continues to operate the Second Street Facility without carrying out required sector-

specific activities pursuant to MSGP Part 8, Subpart N is a separate and distinct violation of the MSGP and Section 301(a), 33 U.S.C. § 1311(a), and Section 402 of the CWA, 33 U.S.C. § 1342.

195.    By admission of the company's President in its e-NOI submitted to EPA on August 9, 2010, Minichiello Bros. engages in auto recycling activities falling under Part 8, Sector M of the MSGP at its Dexter Street Facility.  MSGP Part 8.M.1 – 8.M.5.  Scrap It also engages in auto recycling facilities falling under Part 8, Sector M of the MSGP at its Second Street Facility. Therefore, both Facilities must comply with the sector-specific requirements associated with these activities.

196.    Sector M requirements include:

(a) Drain all vehicles intended to be dismantled of all fluids upon arrival at the site (or as soon thereafter as feasible) or employ an alternative method to prevent spills and leaks (Part 8.M.2.1)

(b) Conduct employee training regarding proper handlng of oil, used mineral spirits, anti-freeze, mercury switches, and solvents (Part 8.M.2.2).

(c) Manage runoff from the facility.  Specifically, the facility must consider the use of practices such as berms, detention ponds, and filtering devices such as oil water separators (Part 8.M.2.3).

(d) Identify locations on a drainage site map that are used for dismantling, storage, and maintenance of used motor vehicle parts, and identifying where specified activities may be exposed to precipitation or surface runoff (including dismantling areas, auto parts storage areas, and liquid storage tanks and drums for fuel and other fluids) (Part 8.M.3.1).

(e) Assess the potential for vehicle storage areas, dismantling areas, parts storage areas, and fueling stations, to contribute pollutants to stormwater discharges. (Part 8.M.3.2).

(f) Inspect vehicles arriving on site for leaks and inspecting quarterly for signs of leakage of all equipment containing oily parts, hydraulic fluids, any other types of fluids, or mercury switches.  Inspecting quarterly for signs of leakage all vessels and areas where hazardous materials and general automotive fluids are stored, including, but not limited to, mercury switches, brake fluid, transmission fluid, radiator water, and antifreeze. (Part 8.M.4).

(g) Utilize sector-specific benchmarks for Total Suspended Solids, aluminum, iron, and lead in conducting monitoring under Section 6 of the MSGP (Part 8.M.5).

197.   Minichiello Bros. and Scrap It have failed, and continue to fail to comply with the sector-specific requirements listed in paragraph 191, above, pursuant to Part 8 Subpart M of the MSGP, at the Second Street and Dexter Street Facilities.

198.   Each and every day since at least October 1, 1992 on which Minichiello Bros. has operated and continues to operate the Dexter Street Facility without carrying out required sector-specific activities pursuant to MSGP Part 8, Subpart M is a separate and distinct violation of the MSGP and Section 301(a), 33 U.S.C. § 1311(a), and Section 402 of the CWA, 33 U.S.C. § 1342.

199.   Each and every day since at least April 21, 2005 on which Scrap It has operated and continues to operate the Second Street Facility without carrying out required sector-specific activities pursuant to MSGP Part 8, Subpart M is a separate and distinct violation

of the MSGP and Section 301(a), 33 U.S.C. § 1311(a), and Section 402 of the CWA, 33 U.S.C. § 1342.

200.    By admission of the facility's President in its e-NOI filed with EPA on August 9, 2010, Minichiello Bros. engages in transportation equipment, industrial or commercial machinery facilities activities subject to Part 8, Subpart AB of the MSGP at its Dexter Street Facility.

201.    Scrap It also engages in transportation equipment, industrial or commercial machinery facilities activities subject to Part 8, Subpart AB of the MSGP at its Second Street Facility.

202.    Minichiello Bros. and Scrap-It must comply with the sector-specific requirements associated with activities at the Second Street and Dexter Street facilities under Subpart AB of the MSGP, including identifying it the SWPPP drainage area site map for each facility the locations where vents and stacks from metal processing and similar operations may be exposed to precipitation or surface runoff (MSGP Part 8.A.B.2).

203.    Minichiello Bros. has failed to, and continues to fail to identify in its SWPPP the drainage area site map the locations at the Dexter Street Facility where vents and stacks from metal processing and similar operations may be exposed to precipitation or surface runoff, pursuant to Part 8.AB.2 of the MSGP.

204.    Scrap It has failed, and continues to fail to identify in its SWPPP the drainage area site map the locations at the Second Street Facility where vents and stacks from metal processing and similar operations may be exposed to precipitation or surface runoff, pursuant to Part 8.AB.2 of the MSGP.

205.    Each and every day since at least October 1, 1992 on which Minichiello Bros. has operated and continues to operate the Dexter Street Facility without carrying out required sector-specific activities pursuant to MSGP Part 8, Subpart AB is a separate and distinct violation of the MSGP and Section 301(a), 33 U.S.C. § 1311(a), and Section 402 of the CWA, 33 U.S.C. § 1342.

206.    Each and every day since at least April 21, 2005 on which Scrap It has operated and continues to operate the Second Street Facility without carrying out required sector-specific activities pursuant to MSGP Part 8, Subpart AB is a separate and distinct violation of the MSGP and Section 301(a), 33 U.S.C. § 1311(a), and Section 402 of the CWA, 33 U.S.C. § 1342.

207.    Both Minichiello Bros. and Scrap It's violations of the CWA at the Facilities are on-going and continuous, are capable of repetition, and result from the same underlying and inadequately resolved causes.

## RELIEF REQUESTED

208.    Wherefore, Plaintiff respectfully requests that this Court grant the following relief:

(a)    Declare Defendants to have violated and to be in violation of Section 301(a) of the CWA, 33 U.S.C. § 1311(a), for its unlawful and unauthorized discharges of pollutants at both Facilities;

(b)    Declare Defendants to have violated and to be in violation of Section 402 of the CWA, 33 U.S.C. § 1342, for its failure to seek coverage under the Multi-Sector General Permit and failure to comply with all applicable requirements of the MSGP for both Facilities;

(c)     Enjoin Defendants from discharging pollutants from both Facilities and into the surface waters surrounding and downstream from the Facilities except as authorized by and in compliance with a National Pollutant Discharge Elimination Permit;

(d)     Order Defendants to comply fully and immediately with all applicable requirements of the Multi-Sector General Permit for both Facilities;

(e)     Order Defendants to pay civil penalties of $27,500 per day per violation for all violations occurring before or on March 15, 2004, and $32,500 per day per violation for all violations occurring after March 15, 2004, and $37,500 per day per violation for all violations occurring after January 12, 2009, for each violation of the CWA at each Facility pursuant to Sections 309(d) and 505(a) of the CWA, 33 U.S.C. §§ 1319(d), 1365(a) and 40 C.F.R. §§ 19.1 – 19.4;

(f)     Order Defendants to take appropriate actions to restore the quality of the waters impaired by its discharges from both Facilities and to remedy harm to the surrounding ecosystems and communities affected by their noncompliance with the CWA;

(g)     Award Plaintiff's costs (including reasonable investigative, attorney, witness, and consultant fees) as permitted by Section 505(d) of the CWA, 33 U.S.C. § 1365(d); and

(h)     Award any such other and further relief as this Court may deem appropriate.

Dated:  October 7, 2010                    Respectfully submitted,

                                           /s/Cynthia E. Liebman (BBO #665528)
                                           Conservation Law Foundation
                                           62 Summer Street
                                           Boston, MA 02110
                                           Phone: 617-350-0990 x 744
                                           Fax: 617-350-4030
                                           cliebman@clf.org


                                           Attorney for Plaintiff
                                           CONSERVATION LAW FOUNDATION